May it please the Court, my name is Anne Harkavy. I'm here on behalf of Jesus Duran-Jurado. I'd like to reserve two minutes for rebuttal, if I could. You may do so. Just watch the clock. Will do. I'd like to focus on two sets of issues this morning. I'll start by responding to the Court's questions about the appropriate standard of review for the claims presented here, and then I'll turn to explaining why the petition requirement in Section 1433, which Congress has since eliminated in the Child Citizenship Act, imposed an unconstitutional burden on U.S. citizens, like my client's parents, who adopted children born abroad, and on those children, like my client, Mr. Duran. First, with respect to the standard of review, the Court has posed two questions. The first is whether judicial scrutiny is wholly inapplicable here, and the second is whether this Court's decision in Wacho is still good law after the Supreme Court's 2001 decision in Nguyen. At the outset, it's important to keep in mind that unlike the Samras case and the Longstaff case, both of which are cited in the Court's recent order, this case involves the rights of U.S. citizens directly. Samras and Longstaff both focus solely on the immigration status of noncitizens. By contrast, this appeal involves a challenge to administrative requirements that are imposed directly on U.S. citizens. So there's no question that constitutional scrutiny applies here where the rights of U.S. citizens are directly affected. Now, who has the standing in this case? I thought Mr. Duran-Hurado, at least at the moment, is not a U.S. citizen. Well, that is actually the crucial question at issue in this appeal. Mr. Duran has standing, both on behalf of himself and he has third-party standing to bring claims on behalf of his U.S. citizen parents, both of whom are deceased. With respect to his parents' claims … But you just opened your argument by saying these were rights of citizens. This man is not, at least at this moment, is not a citizen. Well, I think actually that question is in fact at issue in this appeal. But setting that aside, with respect to the rights of his parents, he is bringing those through the doctrine of third-party standing, and so it is his parents' rights who have – it is both his rights and his parents' rights who have been violated here. All right. So because that's true, the answer to the Court's first question about whether constitutional scrutiny applies is clearly yes. But even setting aside the rights of his parents and focusing exclusively on Mr. Duran's own claims, both of the Court's questions have already been resolved definitively by this Court in Barthelomew v. Ashcroft, a 2003 decision. That case reaffirmed two principles that govern here. The first is that constitutional scrutiny is appropriate for an individual's claim that – and this gets to Judge O'Scanlan's question – but for the operation of an unconstitutional distinction in a naturalization statute, he is a citizen. And the second principle is that the proper level of scrutiny for such a claim is rational basis review and not a less stringent standard. Is there anything in the record that indicates that the mother ever filed an application for citizenship for the child? There is nothing in the record to indicate that. Well, isn't that significant? I don't think it is, Your Honor. The – not with respect to the third-party standing and not with respect to the merits, because the issue is that we don't know one way or the other, but it – because there's nothing in the record either way, but it seems logical to think that she didn't understand that she had to file a certificate for citizenship. But either way, the point is that there was an administrative requirement that was imposed on her as a U.S. citizen that was not imposed on non-U.S. citizens who adopted foreign-born children and brought them here to live and who subsequently had to leave. Well, maybe we're talking ripeness, then. I have some difficulty. If she never pursued on her own choice her alleged rights or presumed rights under the statute or even by implication, as you've developed the argument, how can we even look at this? Well, I don't think it's a ripeness issue because the effects of the disparate imposition of that requirement are felt today and concretely by my client, Mr. Duran. They were felt at the time by his parents who were – on whom a differential disadvantage was imposed because they had to comply with administrative requirements that non-U.S. citizens did not have to comply with. If the 86 statute had granted automatic citizenship to the adopted children of native-born U.S. citizens unless they were of the African-American race, it would be the same problem, wouldn't it? I'm not sure I understand the Court's question. Is it the same ripeness problem? In terms of your approach, your challenge to the statute, you're saying that the 86 statute impermissibly discriminated against adoptive children of native-born African-American citizens that required a petition in the first place, whereas adoptive children of naturalized citizens automatically become citizens under the 86 statute, right? That's correct. It's the differential imposition of the burden that is what's unconstitutional here because it lacks a rational basis. But suppose we were to agree with your constitutional argument. Does a court have the power to grant citizenship? Well, Your Honor, I have a couple of responses to that. The clearest answer is yes. Under this Court's authority in Washope, which has not been undermined by Nguyen, the answer to the question is yes, the Court has the authority to declare citizenship. It's clear we can remove obstacles, impediments to citizenship. But can we grant it? Well, Your Honor, this would not be necessarily, and I don't want to quibble with words, but it wouldn't necessarily be a granting of citizenship where it does not already exist. It would be, as it was in the case of Washope, a declaration of preexisting citizenship by excising the operation of an unconstitutional statute. But you want us to tell the BIA this man's a citizen. Well, there are. Right? That's the relief you're asking for here, is it not? What we're asking for here is a declaration of citizenship, as this Court gave in Washope. Or in the alternative, the Court actually doesn't have to do that. Another alternative would be a declaration that constitutional rights have been violated and then an injunction against imposing consequences, attaching consequences to the imposition of that unconstitutional requirement. And so in the alternative, the Court, instead of declaring Mr. Duran a citizen, could, for lack of a better term, wind back the clock to the time when he received his notice of removal and thereby eradicate the imposition of these unconstitutional consequences. Washoe involved gender discrimination? That's correct. And marital sex. Is that present here? No. Is any suspect category present here? I don't think that there is, Your Honor. So you're agreeing that all the government has to show is a rational basis for each of the legitimacy of each of the two regimes at issue here? I think that that's correct. It's a fairly easy standard, easy hurdle for the government to overcome, isn't it? It's a deferential standard, that's true, but it's not a toothless one. And as this Court made clear in Washoe, the government can't simply put up a reason that doesn't comport with the facts and that is a transparently false one. But the government's reason doesn't have to match perfectly with the facts. The government's rationale can be over-inclusive or under-inclusive. Isn't that correct? That's true, it can, but it can't be in contradiction to. Well, how is the government's rationale in contradiction here? Well, the problem here is that the two sets of problems. One is the imposition of the administrative requirement on the parents and the other is the consequences that that attaches for the child. And the only interest that the government has asserted here is one that's based on the petition requirement serving as a comparable affirmative act to the naturalization process in creating a connection between the child and the country. But there's not that rationale like the one in Washoe that's actually internally inconsistent because, first, it ignores the fact that a foreign-born child who's adopted by U.S. citizens and who comes to this country as a lawful permanent resident to live, which is one of the substantive requirements of the statute, that substantive requirement fills the need, fulfills the government's need for creating a connection to the country. But the government says it doesn't. The government says it wants more. It wants some kind of more familial connection to go through, actually have the family go through the naturalization process itself. The government's argument is that the naturalization process provides some kind of pump and ceremony that will imbue the child with a sense of connection to this  And I think that's a really important point to make in this review because there's no the petition requirement doesn't in fact provide any kind of pump and circumstance. Having the parents go out and file for a certificate of citizenship doesn't provide any kind of comparable pump and circumstance to naturalization. And it doesn't even. Kennedy. Well, I've presided over very substantial naturalization ceremonies where there are all kinds of formal activities, including a band and all that kind of thing. Isn't that the pump and circumstance we're talking about? I'm sure that that's true. But that is notably absent from the petition requirement. So to the extent that the government is arguing that this is asserting that this petition requirement creates the same kind of pump and circumstance and grandeur and forging of ties between the citizen and this country, a petition requirement imposed on parents that doesn't even require any participation by the child doesn't serve the same end. So how does the child? Okay. So one of the requirements is that the child is a lawful permanent resident. How does the child, say a United States citizen back in 1986, goes to a foreign country, adopts a child, brings the child back, is that child automatically a lawful permanent resident? I'm sorry. Could you repeat the scenario? Okay. U.S. citizen goes to China, adopts a child, brings the child back. Right. Does that child automatically become a lawful permanent resident in the 1986 regime? I don't know from the facts in your hypothetical whether they automatically become a lawful permanent resident. But in this case, it's clear that Mr. Duran became a lawful permanent resident. But my question really goes to the connection with the whole immigration service and the whole process and bureaucracy that that attachment would provide. And I don't know, I mean, I understand that your client is a lawful, or was, is a lawful permanent resident. But in looking at the government's interest, it seems to me that you, I don't know if the government actually expressed this all that well in its brief. But it seems to me that there's a connection with the service and with the government that says, hey, I'm here, I'm in this country, and I want to proceed with the citizenship that is done on behalf of the child under the 1986 regime that would not be done necessarily, that would be done in the case of foreign-born parents with their foreign-born children. They would have that interaction with the service, that recognition of citizenship and going through the lawful process. I understand the Court's point. I see I'm out of time. Can I respond to the question? Oh, you can. Oh, please, please. So the answer to the question, I think, is twofold. First, Congress has actually made clear subsequently that that kind of administrative connection is actually not important, and I'm not relying simply on the fact that the Child Citizenship Act was passed, because I recognize that simply the fact that the legislative history and the statements of, say, Representative Smith who introduced the bill, they make clear not only that Congress had made a different policy choice about whether or not it was a good idea to impose this petition requirement, but they actually make clear that Congress saw, and I'm quoting, no valid reason for having that petition requirement. It was simply an extra burden and an extra piece of discrimination against United States citizens and the children that they've chosen to adopt from abroad. So that's the first part of the question, and then the first answer to the question. And then the second answer is that the petition requirement doesn't serve any of the interests that, say, the Supreme Court has recognized in either Miller or in Nguyen with respect to creating or fostering ties between the child and this country or immigration or administrative immigration-related consequences, because 1431 and 1432 back in 1986, which are the statutes that provided for automatic derivative citizenship for foreign-born children who were adopted by one or two alien parents who subsequently naturalized, their Congress said that it was fine for there to be no petition requirement because presumably the naturalization process would serve that function. Here, the fact that the children are lawful permanent residents and have to go through some kind of immigration-related process where the country recognizes they are tied to this country and requires them to live with their U.S. citizen parents in a family unit that is tied to this country, anchored by the two U.S. citizen parents, meets that requirement. I think that's all. Roberts. Thank you, counsel. You have consumed all your time. Thank you. We'll hear now from the other side. Good morning, Your Honors. Jeffrey L. Mencken, United States Department of Justice, for the Respondent. May it please the Court. Mr. Jurado was born in Mexico in 1972 and was adopted in 1979 by two native-born United States citizens. In 2003, he was convicted in California State Court on two charges of transporting or selling cocaine and heroin, and was sentenced to a total of three years in prison. Removal proceedings were commenced in 2006. Between 19 and 18 he was sentenced to three years in prison. Did he ever serve any time in prison? I believe he did. I thought the sentence was reduced to probation. I would defer to Mr. Jurado's counsel on that. I thought he had. It's not clear from the record, at least to me. But it doesn't affect the analysis. I gather, Mr. Jurado, at the moment is in Mexico, but we still have jurisdiction because there is this pending matter, is that correct? Yes, Your Honor. Between 1979 and 2006, Mr. Jurado's adoptive parents never filed a naturalization application on his behalf, and he never applied for U.S. citizenship on his own behalf. So the record, so that we're clear about this, because it can be a little bit confusing, under the 1986 statute, if you're the child, adopted child, parents who are going through the naturalization process, you're under 18 and you're in the United States, the moment that they become citizens, you become a citizen. Correct. Automatically, no petition. Correct. And that is not the statute that applies to Mr. Jurado. That's 8 U.S.C. 1432. I'm more familiar with the INA citations. I think that's INA section 320. But under that same statute, if your parents were native-born or otherwise already citizens, they adopt you, and you enter the United States, you have to petition to become a citizen. It's not automatic. The parents had to file a petition, yes. Then in 2001, Congress changed the statutory regime to sort of marry those two things so that these two different classes were treated the same. But you had to be under 18. Correct. And in 2001, Jurado was not. Durand was not. He was not under 18 by some 15 years, I believe. Okay. Or it might have been 10 years. Okay. But he was not a child. It's well settled that non-native-born aliens, aliens by definition, can obtain citizenship only by strict compliance with the provisions that Congress has set forth. What's the rational basis for treating native-born American citizens differently than naturalized citizens? In other words, giving naturalized citizens a greater immigration benefit than native-born citizens? I'm not certain I understand the question, since native-born citizens have no naturalization requirements. I assume do we have to go back and go through this again? Do you agree that the 86 statute treats naturalized citizens in terms of what happens to their adoptive children more beneficially than native-born citizens? Do you agree? Whether the statute applies here or not. I don't believe, Your Honor, that there's a difference between having automatic citizenship and having to petition for it. Oh, yes, Your Honor. Okay. And do you agree that one group gets it automatically, the other one has to petition? Yes, Your Honor. Okay. What's the rational basis for Congress treating, in this circumstance, naturalized citizens better than native-born citizens? Because, Your Honor, in the instance of a child who is being brought along with the family as it naturalizes, an application is being made, pen is being put to paper. The same requirement applies to an adopted child of native-born citizens. Pen has to be put to paper. A petition has to be made. There's not really much in the way of diverse treatment here. No petition is required if you're naturalized. All you have to do is list the name of the kid on your petition, your own naturalization petition, and satisfy somebody that they're here in the United States, right? The parent has to make application on behalf of the family, and it only applies to a child who is under the age of 18. That is the same. What is the context here? This is an application filed by the alien parents joining their adoptive child in an application for naturalization. Is that the context of the 86 Act? I'm not certain of the procedural process, but, yes, there is a petition that needs to be filed by the native-born parents. So the same action gives citizenship to the parents and the adopted child? It's all in the same proceeding? Yes. Do I understand that correctly? For a non-native-born adoptive parent, yes. It brings the family along, provided the child is otherwise eligible and is under the age of 18. Let me ask you another question, then, under the 86 statute. Let's say a man and a woman apply for naturalization. They don't list children. They go through the adoption process. I mean, they go through the naturalization process, and they later adopt a child. And the child is under 18. Under the 86 Act, would that child automatically become a citizen? No, I believe not, because if it's not, the child is not brought along as the family unit, because they make a, they just leave the child. The child is with them. It was with them when they entered the country. They inadvertently left the child off their own naturalization application. It's a hard. Does that child, is that child have to petition to become a citizen, or is he or she automatically a citizen? If there's not strict compliance with the terms of the statute, then the child would have to otherwise achieve naturalization. The child is not listed with the family unit for whatever reason. You're saying that in that circumstance, the child would have to go through naturalization? If, I understand your hypothetical, Your Honor. A natural, a non, an alien family is naturalizing. For some reason, a child is left off. I would believe, I would submit that under the procedure that applied to Mr. Jurado, the now citizen parents would have to petition on behalf of the alien child, provided they are still under the age of 18. Well, I just don't, I don't read 1432 that, the 1986 version of 1432 that way. Well, wait, wait, wait a second. So what you're saying is that one, okay, the foreign born person comes here, becomes naturalized. Now they're a citizen. So if they're to later adopt a foreign born child, they're under the same rule in 1986 as other citizens. They need to file the petition to make those children become a citizen. That is my understanding, Your Honor. Because once you're naturalized, you're a citizen. Yes. So the rule does operate in that way. It treats the once naturalized person the same as the citizen and the subsequently adopted foreign born child the same as a foreign born child adopted by U.S. citizens. I would agree with that. And if I didn't make my answer clear, I apologize. But, yes, that would be the situation. So if, well, I'm going to ask you the same question I asked your opposing counsel. So if a U.S. citizen couple or a naturalized couple adopts a child from a foreign country, brings them to the United States, and files nothing, do they automatically achieve any immigration status such as LPR or anything? They may become an LPR, but they do not become a citizen in the scenario. Do they become an LPR by operation of law or do they need to file something? I believe the statute says that they need to be eligible for lawful permanent residence. I don't think that conveys it automatically. Now, Your Honor, I would submit that the process that we've just gone through is not wholly irrational, which is the burden of Mr. Jurado in this case. The legislative history of the site It's his burden to establish that it's irrational? The statute is presumed constitutional, and somebody challenging it must rebut every conceivable justification. So, yes, it is the burden What's the best justification in the Department's opinion? The one that we've briefed is that an affirmative act must be undertaken on behalf of the child. And that affirmative act in Mr. Jurado's situation was the parents file a petition. They had ample opportunity to do that. He was adopted in 1979 and he aged out in 1990. There's no claim that he was deprived of that opportunity. He also was not deprived of an opportunity after turning 18 to petition on his own behalf. The only interest Mr. Jurado ever expressed in becoming a U.S. citizen came after removal proceedings were commenced against him. Counsel, do you concede that we have to remand on the aggravated felony issue? It was clearly exhausted, was it not? Yes, we do concede and, in fact, we moved for a remand on that basis and it was not granted. Thank you, counsel. Your time has expired. Thank you, Your Honor. The case just argued will be submitted for decision and we will hear argument in United States v. Lewis.
judges: O'scannlain,hawkins,wardlaw